ELLIOTT, Appellant, v. JACKSON COUNTY.

Division Two, March 6, 1906.

PROSECUTING ATTORNEY: Chief Deputy in Jackson County: Salary: Official Acts. The statute provided that in counties having between 100,000 and 300,000 inhabitants the prosecuting attorney "shall be entitled to such a number of deputies and assistants, to be appointed by such official, as the county court may deem necessary, and such deputies and assistants shall be divided into classes as follows: Class A, chief deputy; Class B, assistants or deputies. . . . Class A shall be paid $1,500 per year, class B $1,200 per year. . . . The appointment and number of deputies and assistants, not expressly fixed by this article, shall be subject to the approval

of the judge of the criminal court." The prosecuting attorney appointed two chief deputies, with the approval of the criminal judge, and when one of them resigned he appointed plaintiff (who had been an assistant in class B, as shown by the record) a chief deputy in Class A, but no record was made by the court in term time approving this appointment. The county court refused to pay plaintiff $1,500, but did pay him $100 each month, the salary prescribed for deputies in Class B. *Held*, that the statute plainly provides for only one chief deputy, and as another held that position when plaintiff was appointed thereto, and continued to so hold it, the appointment of plaintiff was without authority of law, and he cannot recover the extra $25 for the months he served as chief deputy. *Held*, also, that the approval of the judge of the criminal court of the appointment of two chief deputies does not affect the validity of the appointment, because the statute itself fixes the number at one. *Held*, also, that plaintiff's official acts as assistant prosecuting attorney are not affected by this suit, which is simply one for salary.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Geo. N. Elliott pro se.*

(1)   It is the settled law in this State that, in an action for fees, or for salary, the title to public office cannot be determined.   *Quo warranto* is the exclusive proceeding in this State by which title to public office can be tried and determined, except in contested elections which are determined by special statutory proceeding.   Sec. 4457, R. S. 1899; St. Louis County Court v. Sparks, 10 Mo. 121; State ex rel. v. Auditor, 34 Mo. 383, 36 Mo. 70; State ex rel. v. Auditor, 35 Mo. 146; Beck v. Jackson, 43 Mo. 119; Hunter v. Chandler, 45 Mo. 457; State ex rel. v. Auditor, 48 Mo. 217; State ex rel. v. Auditor, 52 Mo. 512; State ex rel. v. Vail, 53 Mo. 108; State ex rel. v. Seay, 64 Mo. 89; State ex rel. v. John, 81 Mo. 17; State ex rel. v. Francis, 88 Mo. 557; State ex rel. v. May, 106 Mo. 508; State ex rel. v. Meek, 129 Mo. 431; State ex rel. v. Hostetter, 137 Mo. 639;

State ex rel. v. Aloe, 152 Mo. 479; State ex rel. v. Withrow, 154 Mo. 397; Arnold v. Henry, 155 Mo. 54; State ex inf. v. Lund, 167 Mo. 228; State ex inf. v. Evans, 166 Mo. 347; State ex inf. v. Talty, 166 Mo. 529; Dickinson v. City of Butler, 27 Mo. App. 14; State ex rel. v. Wear, 37 Mo. App. 334; State ex rel. v. Police Com'rs, 80 Mo. App. 223. (2) (a) In this State the law is also settled that a *de facto* public officer in possession of the office is entitled to the emoluments of the office until his authority is revoked by proper proceedings. In the case at bar the trial court had the right to determine whether or not plaintiff, for the time in question, was a *de facto* assistant prosecuting attorney class "A" in possession of the office with color of title and performed its duties. On affirmative finding of these facts plaintiff was entitled to judgment. State ex rel. v. Draper, 48 Mo. 213; Hunter v. Chandler, 45 Mo. 457; State ex rel. v. Clark, 52 Mo. 508; State ex rel. v. John, 81 Mo. 13; Bates v. St. Louis, 153 Mo. 20; State ex rel. v. Walbridge, 153 Mo. 202; Dickerson v. City of Butler, 27 Mo. App. 14. (b) That there cannot be an officer *de facto* where there is no such office *de jure* has been held in a few of the earlier decisions in this State, as, for instance, in: Ex parte Snyder, 64 Mo. 58; State v. O'Brian, 68 Mo. 153; Ayers v. Latimer, 57 Mo. App. 83; Jester v. Spurgeon, 27 Mo. App. 477. But these decisions are not in accord with the true rule in this State at the present time, and they were rendered on a state of facts in each case which did not involve questions of public policy, making it necessary to uphold the acts of a *de facto* public officer for the public good. The following decisions hold to the better rule that often, through motives of public policy, to preserve the organization of society, it is necessary to recognize a *de facto* officer where even the office itself, *de jure,* does not exist: State ex rel. v. Sutton, 3 Mo. App. 388; Adams v. Lindell, 5 Mo. App. 197; Fleming v. Mulhall, 9 Mo. App. 73; Conway v. St. Louis, 9

Mo. App. 490; Shaeffer v. Bernero, 11 Mo. App. 564; City v. Stoddard, 16 Mo. App. 177; Simpson v. McGonegal, 52 Mo. App. 540; Walker v. Ins. Co., 62 Mo. App. 223; State ex rel. v. Land Co., 84 Mo. App. 40; Adams v. Lindell, 72 Mo. 198; Perkins v. Fielding, 119 Mo. 159.

*John A. Sea* for respondent.

(1) The law contemplates but one chief deputy in the office of the prosecuting attorney of Jackson county. Sec. 3286, R. S. 1899; Laws 1893, p. 168. (2) The judge of the criminal court has no authority to fix the number of deputies or assistants for the prosecuting attorney, except in Class B. Secs. 3286, 3287, R. S. 1899; Laws 1893, p. 168. (3) In construing a statute, its words must be taken in their plain, ordinary meaning, and to construe the word "chief" so that two (or more) can each be highest and change the word "deputy" to "deputies" would be to give a meaning to these words found nowhere in the English language, and do violence to a fundamental rule of construction of statutes. Randall v. Garnette, 78 Mo. App. 609; State ex rel. v. Auditor, 36 Mo. 66; sec. 4160, R. S. 1899. (4) In the construction in which they are used "deputies or assistants" mean one and the same thing, *i. e.,* deputies; as it grants special privileges, it should be strictly construed. Bovard v. Railroad, 83 Mo. App. 498. (5) No person can be a *de facto* officer unless there is an office to fill. Appellant could not be a *de facto* chief deputy, as that office was already filled by its proper officer, duly qualified and acting as such *de jure.* State ex rel. v. Dorton, 145 Mo. 304.

GANTT, J.—This is an action brought by the plaintiff, as attorney at law, for balance of salary, which he claims is due him as assistant prosecuting attorney of Jackson county, for the months of February, March, April, May and June, 1896, amounting in the aggregate

to one hundred and twenty-five dollars, with interest on the same from July first, 1896. In his petition he alleges that Jackson county in the year 1896 contained a population of more than one hundred thousand and less than three hundred thousand inhabitants; that on about the first day of January, 1896, he was appointed assistant prosecuting attorney, in Class A of said Jackson county, by W. T. Jamison, the prosecuting attorney of Jackson county, and that said appointment was approved by the judge of the criminal court of Jackson county, and thereupon plaintiff was duly commissioned and qualified and entered upon the performance of and performed the duties of said assistant attorney, Class A, from the first day of January, 1896, up to and including the first day of December, 1896; that the salary of said office established by law for said time was $1,500 per year, payable by the defendant Jackson county, to the plaintiff in monthly installments of $125; that during said time the said W. T. Jamison, as prosecuting attorney, made up and presented to the county court of Jackson county, for allowance and payment, a monthly pay roll, including $125 for plaintiff, for every month of said year of 1896; that the county court of the defendant, Jackson county, refused to allow and pay plaintiff for the months of February, March, April, May and June, the full installment of $125 a month, but allowed and paid plaintiff the sum of $100 per month for said five months, which was accepted by plaintiff on account; that the sum of $25 per month for the said five months amounting to $125 is still due plaintiff from the defendant, on said salary account, with interest from July 1, 1896.

The answer of the county was a general denial of all the allegations in the petition, except that the defendant county contained a population of more than one hundred thousand and less than three hundred thousand inhabitants, and then set up the following defense: "The defendant further answering states that

in the year 1896, W. T. Jamison was the duly qualified
and acting prosecuting attorney of Jackson county, and
as such he appointed George A. Neal as assistant pros-
ecuting attorney in Class A, which appointment was ap-
proved by the judge of the criminal court of Jackson
county, Missouri; that said George A. Neal occupied
said position from the month of February, 1895, un-
til on or about the first day of July, 1896, and that dur-
ing the months mentioned in the petition, to-wit, Feb-
ruary, March, April, May and June, the county court
of Jackson county recognized said George A. Neal as
the only assistant prosecuting attorney in said county
in Class A, and as such paid him his salary as said assis-
tant in Class A, for and during said months, and said
Neal was the only assistant prosecuting attorney of said
county in said Class A, during said months. The de-
fendant, for further answer and defense, states that in
the month of August, 1900, plaintiff presented his claim
here sued on, to the county court of said Jackson coun-
ty, and on the 29th day of August, 1900, said court took
up said claim for hearing and after considering the
same, rendered the following judgment thereon, to-wit:
'In the matter of the claim of George N. Elliott. Now
this matter coming on to be heard and the court having
considered the same, finds in favor of the county, for
the following reasons: First, the county does not owe
the debt. Second, the claim has heretofore been adjudi-
cated in this court, and the claim refused and denied.'
Defendant says that by said proceedings in the county
court and by judgment aforesaid on the claim here sued
on, the said claim and cause of action of plaintiff has
been finally adjudicated, and defendant pleads the said
judgment and adjudication in bar of this action as an
estoppel of the prosecution of this cause. And defend-
ant further answering says that during the months of
February, March, April, May and June, the county
court recognized as the chief deputy and assistant in
Class A, to the prosecuting attorney, said George A.

Neal, paid him the salary of such assistant, to-wit, $125 per month, for each of said months. The county court recognized as an assistant in Class B, to said prosecuting attorney, the plaintiff herein during all of said months and paid him the salary of $100 per month, which plaintiff accepted for each of said months, and plaintiff became and is estopped to deny that he was in said Class B of assistants to said prosecuting attorney during said months. Plaintiff has been paid all to which he was entitled and defendant owes him nothing."

The jury was waived and the cause was tried by the circuit court of Jackson county, at the January term, 1901, and judgment rendered in favor of the defendant. A motion for a new trial was filed, heard and overruled and the plaintiff appealed to the Kansas City Court of Appeals, and that court, at the March term, 1903, transferred the cause to this court because the county of Jackson is a party to the suit.

No declarations of law were asked or refused by the circuit court, and no special finding of facts was made by the said court. It seems to be mutually conceded by counsel, however, that the judgment of the circuit court was based on the ground that section 3286, Revised Statutes 1899 (Laws 1893, p. 168) contemplated and provides for but one chief deputy in the office of the prosecuting attorney of Jackson county, and that the judge of the criminal court had no authority to fix the number of deputies or assistants for the prosecuting attorney, except in Class B, and that, as the record shows that at the time for which plaintiff seeks pay for his services George A. Neal was holding the position of chief deputy, Class A, under Prosecuting Attorney Jamison, the duly qualified acting prosecuting attorney of Jackson county, it was manifest that plaintiff was not entitled to the salary for said months of the chief deputy in Class A. The statute upon which plaintiff bases his claim is the act of 1893, now article 2 of chapter 27, Revised Stat-

utes 1899, which fixes the fees for certain officers in counties having a population of one hundred thousand or less than three hundred thousand. Section 3286 provides: "Each of the above-named officers [among others, prosecuting attorney] in any such county shall be entitled to such a number of deputies and assistants to be appointed by such official as the county court shall deem necessary for the prompt and proper discharge of the duties of their various offices, and such deputies and assistants shall be divided into classes as follows, and be paid in the same manner as the officers: Class A, chief deputy; Class B, assistants or deputies; and Class C, office clerks or copyists. Class A shall be paid $1500 per year; Class B, $1200 per year; Class C, $900 per year." Section 3287 provides: "The appointment and number of deputies and assistants of the clerk of the criminal court, the marshal and prosecuting attorney, not expressly fixed by this article, shall be subject to the approval of the judges of the criminal court of the county, and such deputies and assistants shall not exceed the number determined by said judges to be necessary aids for the performance of the duties of said offices respectively." It is admitted by the plaintiff that the prosecuting attorney, Jamison, on the 9th of February, 1895, appointed George A. Neal assistant prosecuting attorney in Class A, and that Mr. Neal during the year 1895 and up to July, 1896, performed the duty of deputy prosecuting attorney in Class A, and was paid the salary of $1,500 a year in monthly installments, up to the first day of July, 1896. It is also admitted that plaintiff was appointed assistant prosecuting attorney in Class B, in 1895, and acted and performed the duties of assistant in Class B, until about the first day of January, 1896, when Mr. James S. Botsford resigned his position as assistant prosecuting attorney under said Jamison, whereupon said plaintiff was appointed by said Jamison to deputyship in Class A, in January,

1896, but no record was made by the court in term time approving this appointment of Mr. Elliott, the plaintiff. There is no record entry of plaintiff's appointment except the one appointing him deputy or assistant in Class B.    Under these circumstances the county court refused to pay him the salary prescribed for the chief deputy in Class A, or $1,500, but did pay him for each month $100, the salary prescribed for deputies in Class B. The plaintiff now insists on this appeal that he is entitled to recover that portion of the salary of chief deputy in Class A, which the county court refuses to pay him. We think that section 3286 of the statute plainly provides for only one chief deputy in Class A for the prosecuting attorney, and that as Mr. Neal had already been appointed deputy in Class A, and was holding that position when the prosecuting attorney attempted to make another chief deputy in Class A, the appointment of the plaintiff in that class was without authority of law and the county court properly refused to pay him the salary of chief deputy, and that the judgment of the circuit court was unquestionably correct. The number of deputies in Class A was specifically fixed by the statute and was limited to one chief deputy; nor will it avail the plaintiff that the prosecuting attorney with the approval of the criminal court had in 1895 appointed two chief deputies in the persons of Mr. Neal and Mr. Botsford. When Mr. Botsford resigned, Mr. Neal remained the only chief deputy which the statute permitted, and there was no authority in the prosecuting attorney to appoint another chief deputy until Mr. Neal resigned his position on the first day of July, 1896. The statute (section 3287) only permitted the judge of the criminal court a discretion as to the appointment and number of deputies for the prosecuting attorney when the number was not expressly fixed by the statute, but the statute fixes clearly and distinctly that the prosecuting attorney shall appoint only one chief deputy in Class A, and therefore, the attempt to appoint more

than one assistant in that class was clearly beyond the power of the prosecuting attorney, even with the approval of the court, so as to entitle him to the salary fixed for the one chief deputy. The dire results which plaintiff anticipates from this construction of the statute, to-wit, that all of his official acts as assistant prosecuting attorney, would be null and void, cannot follow; that plaintiff was an assistant prosecuting attorney and all his acts as such valid at least as to the third persons, is not a question in this case. The question is one simply of salary and whether under the pleadings and evidence in this case he was entitled to the salary of chief deputy. As we understand the judgment of the circuit court it simply adjudged that inasmuch as the prosecuting attorney had one chief deputy *de jure* and *de facto*, there was no authority to appoint plaintiff chief deputy, and require the county court to pay him the salary of chief deputy in spite of the plain statutory provision for the payment of the fees of the prosecuting attorney and his deputies. Having reached this conclusion, it is unnecessary to pass upon any other contention in the case.

The judgment of the circuit court is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.